Citation Nr: 1730412 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 13-16 872 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for degenerative joint disease, left hip, secondary to service-connected left hallux valgus, left great toe, status post-bunionectomy and metatarsal osteotomy.

2. Entitlement to service connection for left lower extremity sciatica secondary to service-connected degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1.

3. Entitlement to service connection for right lower extremity sciatica secondary to service-connected degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1.

4. Entitlement to service connection for an acquired psychiatric disorder to include anxiety and depression, secondary to service-connected disabilities. 

5. Entitlement to service connection for bilateral hearing loss.

6. Entitlement to an increased rating for hallux valgus, left great toe, status post-bunionectomy and metatarsal osteotomy, currently rated as 10 percent disabling.

7. Entitlement to an increased rating for degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1, currently rated as 10 percent disabling.

8. Entitlement to a total temporary rating due to treatment for a service-connected condition. 

9. Entitlement to a total disability rating based on individual unemployability (TDIU). 


REPRESENTATION

Veteran represented by: Jan Dils, Attorney at Law


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

B. Cannon, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from April 1973 to April 1976. He was honorably discharged. 

This matter comes before the Board of Veterans' Appeals (Board) from June 2010, January 2012, February 2013, May 2013, and October 2013 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia Regional Office (RO). 

In July 2014, the appellant testified during a travel board hearing before the undersigned. A transcript of that hearing is of record.

In June 2015, the Board remanded the Veteran's claims to obtain additional VA examinations. The primary basis for the remand was the Veteran's hearing testimony that his conditions had worsened.

The claim has now been returned to the Board for review. Upon reviewing the development since June 2015, the Board finds there has been substantial compliance with its remand instructions. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (finding that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance"); Stegall v. West, 11 Vet. App. 268, 271 (1998) (finding that a remand by the Board confers on the appellant the right to compliance with the remand orders). Thus, the Board will proceed to review and decide the claim with respect to the issues now on appeal based on the evidence that is of record.


FINDINGS OF FACT

1. The Veteran does not have a current degenerative joint disease of the left hip.

2. The Veteran does not have a current left lower extremity sciatica disorder.

3. The Veteran does not have a current right lower extremity sciatica disorder.

4. The Veteran does not have a current acquired psychiatric disorder. 

5. The Veteran does not have a current bilateral hearing loss disorder for VA purposes.

6. The Veteran's hallux valgus is characterized by an operation with resection of the metatarsal head.

7. The Veteran's degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1 is not characterized by forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, the combined range of motion of the thoracolumbar spine not greater than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

8. The Veteran has not required hospital treatment or observation or a period of convalescence for a service-connected disability. 

9. The Veteran's service-connected disabilities by themselves are not of sufficient severity to produce unemployability. 


CONCLUSIONS OF LAW

1. The criteria for service connection for degenerative joint disease, left hip, on a direct basis or secondary to service-connected left hallux valgus, left great toe, status post-bunionectomy and metatarsal osteotomy, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

2. The criteria for service connection for left lower extremity sciatica, on a direct basis or secondary to service-connected degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

3. The criteria for service connection for right lower extremity sciatica on a direct basis or secondary to service-connected degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

4. The criteria for service connection for an acquired psychiatric disorder to include anxiety and depression, on a direct basis or secondary to service-connected disabilities, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

5. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.385 (2016).

6. The criteria for a disability rating in excess of 10 percent for hallux valgus, left great toe, status post-bunionectomy and metatarsal osteotomy, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.71a, Diagnostic Code 5284 (2016).

7. The criteria for a disability rating in excess of 10 percent for degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.71a, Diagnostic Code 5003-5242 (2016).

8. The criteria for a total temporary rating for a service-connected disability are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.29, 4.30 (2016). 

9. The criteria for entitlement to a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (2014); 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies in the instant case.

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). VCAA notice should be provided to a claimant before the initial unfavorable RO decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Regarding the Veteran's claims for service connection, by correspondence, including that dated April 2010, the Veteran was informed of the evidence and information necessary to substantiate the service connection claims, the information required of the Veteran to enable VA to obtain evidence in support of the claims, the assistance that VA would provide to obtain evidence and information in support of the claims, and the evidence that should be submitted if there was no desire for VA to obtain such evidence. This notice was completed prior to the initial RO adjudication of the claims. The duty to notify has been met. 

Regarding the Veteran's claims for increased rating, the claims arise from disagreement with disability ratings that were assigned following the grant of service connection for the subject disorders. Courts have held that once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The Veteran's service treatment records are associated with the claims file, as are VA and private medical records. The Veteran has not referenced any other pertinent, obtainable evidence that remains outstanding. Further, the VA medical examination and opinions are adequate, as they are predicated on a substantial review of the record and medical findings, and consider the Veteran's complaints and symptoms. 38 C.F.R. § 3.159(c)(4); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Accordingly, the Board finds VA's duty to assist has been met. 38 C.F.R. § 3.159(c)(4).

II. Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service, even if the disability was initially diagnosed after service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease initially diagnosed after service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection may also be granted on a secondary basis for a disability which is proximately due to, or the result of, a service-connected disease or injury. 38 C.F.R. § 3.310(a). Service connection on a secondary basis may not be granted without medical evidence of a current disability and medical evidence of a nexus between the current disability and a service-connected disability. See Wallin v. West, 11 Vet. App. 509, 512-14 (1998). An increase in severity of a nonservice-connected disease or injury shall not be service-connected if it is due to the natural progression of the nonservice-connected condition. See Allen v. Brown, 7 Vet. App. 439 (1995).

A. Left hip disorder, sciatica, and acquired psychiatric disorder

An April 2017 VA examiner opined that it is less likely than not that the Veteran's left hip disorder is related to service, on a direct or secondary basis. The reason is that the Veteran does not have a left hip disorder. According to the examiner, the Veteran denied having a left hip disorder, and the left hip pain totally resolved itself after the Veteran's aortofemoral bypass. Consistent with this, during an April 2013 VA foot examination, the Veteran stated that the pain in his hips and left knee resolved after the aortofemoral bypass. X-rays of the hips dated January 2016 are normal. The examiner concluded that the Veteran's hip pain was due to vascular ischemia, a nonservice connected disorder, not a service-connected condition. 

The same examiner opined that the Veteran's bilateral sciatica is less likely than not related to service, on a direct or secondary basis. The reason is that the Veteran does not have peripheral neuropathy in either of the lower extremities. As with the hip pain, the Veteran's leg pain also totally resolved itself after the aortofemoral bypass. 

Also in April 2017, a VA psychologist concluded that the Veteran did not have an acquired psychiatric disability. After the Veteran was asked about his symptoms by the VA examiner, the examiner stated that the Veteran answered as follows: "I don't have no depression and my nerves are fine. Nothing happened in service to me. I don't really know why I am here. My lawyer set all this up, they just told me to come down here and see if everything was ok. I have a problem with the VA from my aorta three or four years ago, though, it got all clogged up and it wasn't handled right. I am going to see the patient advocate about that today though. That's really all that is going on. I sleep pretty good, and I don't get depressed." The Veteran denied manic/hypomanic symptoms and any history of psychotic symptoms, derealization, or panic.

These medical opinions are probative because they are based on a review of the record and contain clear conclusions with supporting data connected by a reasoned medical explanation. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301-02 (2008). The lack of current diagnoses is fatal to the Veteran's claims of service connection for a left hip disorder, bilateral sciatica, and an acquired psychiatric disorder. Accordingly, because the evidence preponderates against the claim of service connection for these disorders, the benefit-of-the-doubt doctrine is inapplicable, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). 

In reaching this conclusion, the Board has considered the Veteran's lay statements, including those made during the July 2014 hearing, that he has pain in his legs and hips and that he has experienced depression because he has been unable to work. The Board ascribes more weight to the statements made by the Veteran during the April 2017 VA examinations, because such statements are the most recent and because statements made for the purpose of medical diagnosis or treatment are exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive a proper diagnosis or treatment. White v. Illinois, 502 U.S. 346, 356 (1992).

The Board has also considered identical medical opinions, received by different private doctors in September 2011 and April 2012, stating that the Veteran's sciatica and hip disorders are at least as likely as not a direct result of aggravation of the left great toe injury sustained in service. These records do not consider the Veteran's testimony that the pain related to these conditions was resolved after the Veteran's aortofemoral bypass. These opinions are therefore not based on sufficient facts and bases and are less probative than the April 2017 VA medical opinions. 

B. Hearing loss

Service connection will be presumed for certain chronic diseases, including other organic diseases of the nervous system, i.e. bilateral hearing loss, if manifest to a compensable degree within one year after discharge from service. See 38 C.F.R. §§ 3.307, 3.309. This provision is inapplicable here, where there is no evidence of hearing loss within a year of service. 

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 hertz (Hz) is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies at 500, 1000, 2000, 3000, or 4000 Hz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. Even if disabling loss is not demonstrated at separation, a veteran may establish service connection for a current hearing disability by submitting evidence that a current disability is causally related to service. See Hensley v. Brown, 5 Vet. App. 155, 160 (1993).

The Veteran's most recent audiological hearing exam was in April 2017. For the right ear, the examiner measured auditory thresholds of 20, 20, 15, 15, and 30 decibels at 500, 1000, 2000, 3000, and 4000 Hz, respectively. For the left ear, the examiner measured auditory thresholds of 15, 15, 25, 20, and 30 decibels at 500, 1000, 2000, 3000, or 4000 Hz, respectively. For both ears, the examiner indicated Maryland CNC Test scores of 94 percent. These auditory threshold values and speech recognition scores do not indicate the presence of a hearing loss under 38 C.F.R. § 3.385. 

The Board has considered the Veteran's lay statements about his hearing problems and their onset during service, including the Veteran's July 2014 testimony that his hearing has grown worse since service. The Veteran is competent to testify regarding such symptoms because such symptoms are within the knowledge and observations of lay witnesses. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). While the Board is sympathetic towards the Veteran's condition, for VA purposes, hearing loss can only be established through the mechanical application of 38 C.F.R. § 3.385. Lay testimony by itself is insufficient to establish a current hearing loss disability. 

III. Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). 

VA has a duty to consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." Hart v. Mansfield, 21 Vet. App. 505 (2007).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

A. Hallux valgus, left great toe

The RO granted service connection for hallux valgus at an initial rate of 0 percent from March 22, 2010, and at 10 percent from January 19, 2011, and the Veteran is appealing those decisions. Because the claim is an initial claim, the Board will consider evidence of symptomatology from March 22, 2010, the date that the claim was filed. 38 C.F.R. § 3.400(o). 

Under Diagnostic Code 5280, a 10 percent rating is appropriate if the condition is equivalent to amputation of the great toe. 38 C.F.R. § 4.73. A 10 percent rating is also appropriate where there has been an operation with resection of the metatarsal head. Id.

A May 2010 VA foot examination indicated left foot pain that is aggravated by walking on an incline or using stairs. Other symptoms included fatigability, lack of endurance, and stiffness while standing or walking. The examiner indicated "no significant effects" related to "general occupational effect" and only mild to moderate effects on daily activities such as chores, shopping, exercise, and recreation. 

On January 19, 2011, The Veteran had a bunionectomy on his great left toe. A July 2011 VA foot examination reported that left foot pain was aggravated by prolonged standing and walking but that assistive devices were not needed. A March 2013 VA foot examination indicated mild to moderate symptoms and some difficulty walking. An April 2013 VA foot examination indicated mild to moderate symptoms and some limping, but that the Veteran's foot disorder had greatly improved since the surgery and that the Veteran did not use assistive devices for walking.

During an April 2017 VA foot examination, the Veteran reported no pain in the left foot and no flare-ups, functional loss, or use of assistive devices as a result of disability. A comment in the examination indicated relief of foot pain after surgery. No other foot injuries or conditions were identified. 

Prior to January 19, 2011, there is no evidence of a condition equivalent to amputation of the great toe or an operation with resection of the metatarsal head so as to support a compensable rating. From that date, the Veteran's operation justifies a 10 percent rating. The Veteran's credible reports of pain and stiffness are insufficient to justify a higher rating during the time on appeal. 

The evidence does not support additional staged ratings for any time period on appeal. For no period would the Veteran be entitled to a higher rating under a different Diagnostic Code, because no other foot condition has been identified. Lastly, the Board finds that the issue of an extraschedular rating has not been raised by the record, and will not consider referral. Doucette v. Shulkin, 28 Vet. App. 366, 371 (2017).

B. Degenerative arthritis of the lumbar spine 

The RO granted service connection for degenerative arthritis of the lumbar spine at an initial rating of 10 percent under Diagnostic Code 5003-5242 and the Veteran is appealing that decision. Because the claim is an initial claim, the Board will consider evidence of symptomatology from March 22, 2010, the date that the claim was filed. 38 C.F.R. § 3.400(o).

Under the current rating criteria, disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. Ratings under the General Rating Formula for Diseases and Injuries of the Spine are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. 

The General Rating Formula for Diseases and Injuries of the Spine provides a 10 percent disability rating for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a. A 20 percent disability rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id. A 40 percent disability rating is assigned for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. Id. A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine. Id. A 100 percent disability rating is assigned for unfavorable ankylosis of the entire spine. Id. 

Evaluations for intervertebral disc syndrome are to be performed either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under § 4.25. 38 C.F.R. § 4.71a, Note 6. Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent disability rating is assigned for incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. 38 C.F.R. § 4.71a. A 20 percent disability rating is assigned for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. Id. A 40 percent disability rating is assigned for incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. Id. A 60 percent disability rating is assigned for incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. Id.

Under Diagnostic Code 5003, a 10 percent rating is appropriate with x-ray evidence of involvement of two or more major joints or two or more minor joint groups. Id. A 20 percent rating is appropriate with x-ray evidence of involvement of two or more major joint groups or two or more minor joint groups, with occasional incapacitating exacerbations. Id. These ratings will not be combined with ratings based on limitation of motion and will not be utilized in rating conditions listed under Diagnostic Codes 5013 to 5024, inclusive. Id.

An October 2011 VA examination reported 90 degrees of lumbar spine flexion with no pain, 25 degrees of extension with no pain, 30 degrees of left lateral bending with no pain, and 30 degrees of right lateral bending with no pain, for a combined range of motion of 175 degrees. A March 2013 VA back examination reported 70 degrees of forward flexion with painful motion starting at 70 degrees, 20 degrees of extension with no objective evidence of painful motion, 15 degrees of right lateral flexion with painful motion at 15 degrees, and left lateral flexion of 20 degrees with painful motion at 20 degrees, for a combined range of motion of 125 degrees. There were no reports of guarding, abnormal gait, ankylosis, or intervertebral disc syndrome. An April 2017 VA examination reported a normal range of motion with some pain that did not result in or cause functional loss. Like the March 2013 VA examination, the April 2017 VA examination did not report guarding, abnormal gait, ankylosis, or intervertebral disc syndrome. 

The Veteran's symptoms are consistent with the 10 percent rating that he is currently assigned. There is no evidence of forward flexion of the thoracolumbar spine less than 60 degrees, combined range of motion of the thoracolumbar spine less than 120 degrees, muscle spasm or guarding severe enough to result in abnormal gait or spinal contour, or ankylosis. For these reasons, a rating in excess of 10 percent is not justified. 

For no period would the Veteran be entitled to a higher rating under a different Diagnostic Code. While the Veteran has been diagnosed with degenerative arthritis of the lumbar spine, a higher rating under Diagnostic Code 5003 would not appropriate because there is no evidence of occasional incapacitating exacerbations. A higher rating under Diagnostic Code 5243 is not warranted because the Veteran has not been diagnosed with intervertebral disc syndrome. 

The evidence does not support additional staged ratings for any time period on appeal. The Board finds that the issue of an extraschedular rating has not been raised by the record, and will not consider referral. Doucette, 28 Vet. App. 371.

When rating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating based on functional loss due to limited or excess movement, pain, weakness, excess fatigability, or incoordination, to include during flare-ups and with repeated use, when those factors are not contemplated in the relevant rating criteria. DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.40, 4.45, 4.59 (2016). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the Diagnostic Codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). Such inquiry is not to be limited to muscles or nerves. Limitation-of-motion determinations are, if feasible, to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, flare-ups, or pain. DeLuca, 8 Vet. App. at 207. 

By itself, pain throughout a joint's range of motion does not constitute functional loss, but if there is additional pain, the examiner must address any additional loss of motion due to the DeLuca factors. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). If a claimant is already receiving the maximum disability rating available based on symptomatology that includes limitation of motion, it is not necessary to consider whether 38 C.F.R. §§ 4.40 and 4.45 are applicable. Johnston v. Brown, 10 Vet. App. 80, 85 (1997). The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011).

The October 2011 VA examination revealed that there was no painful motion and that the Veteran had normal flexion and combined range of motion for the thoracolumbar spine. This weighs against an additional increased rating under DeLuca. 

The March 2013 VA examination revealed no limitation in range of motion after repetitive use testing. The Veteran did not report that flare-ups impact the function of his spine. Functional loss included less movement than normal, pain on movement, and interference with sitting, standing, and/or weight-bearing. The Board notes that pain, by itself, does not constitute functional loss. Mitchell, 25 Vet. App. at 32. The evidence weighing in favor of an increase under DeLuca is interference with sitting, standing, and/or weight-bearing. Evidence weighing against an increased rating is the lack of pain during flare-ups, no limitation in range of motion after repetitive use, and an essentially normal flexion and combined range of motion for the thoracolumbar spine. For the March 2013 VA examination, the evidence as a whole weighs against an additional increased rating under DeLuca. 

The April 2017 VA examination indicated no loss of function or range of motion after repetitive-use testing and no loss in functional ability due to weakness, fatigability, or incoordination. The Veteran did not report that flare-ups impact the function of his spine. The Veteran displayed normal flexion and combined range of motion of the thoracolumbar spine with some pain, but the pain did not result in or cause functional loss. This evidence in the April 2017 VA examination weighs strongly against an additional increased rating under DeLuca. Taken together, the VA examinations do not warrant a higher rating under DeLuca.

IV. Temporary Total Rating

A total disability rating (100 percent) will be assigned without regard to other provisions of the rating schedule when it is established that a service-connected disability has required hospital treatment in a VA or an approved hospital for a period in excess of 21 days or hospital observation at VA expense for a service-connected disability for a period in excess of 21 days. 38 C.F.R. § 4.29. This increased rating will be effective the first day of continuous hospitalization and will be terminated effective the last day of the month of hospital discharge (regular discharge or release to non-bed care) or effective the last day of the month of termination of treatment or observation for the service-connected disability. 38 C.F.R. § 4.29 (a).

Notwithstanding that hospital admission was for disability not connected with service, if during such hospitalization, hospital treatment for a service-connected disability is instituted and continued for a period in excess of 21 days, the increase to a total rating will be granted from the first day of such treatment. If service connection for the disability under treatment is granted after hospital admission, the rating will be from the first day of hospitalization if otherwise in order. 38 C.F.R. § 4.29(b).

The assignment of a total disability rating on the basis of hospital treatment or observation will not preclude the assignment of a total disability rating otherwise in order under other provisions of the rating schedule, and consideration will be given to the propriety of such a rating in all instances and to the propriety of its continuance after discharge. Particular attention, with a view to proper rating under the rating schedule, is to be given to the claims of veterans discharged from hospital, regardless of length of hospitalization, with indications on the final summary of expected confinement to bed or house, or to inability to work with requirement of frequent care of physician or nurse at home. 38 C.F.R. § 4.29(c).

Total temporary ratings can also be assigned based on convalescence following surgical procedures. Pursuant to 38 C.F.R. § 4.30, a total disability rating is assigned when it is established by report or hospital discharge or outpatient release that entitlement is warranted, effective the date of hospital admission and continuing for one, two, or three months from the first day of the month following hospital discharge, due to medical evidence showing that: 1) the veteran underwent surgery necessitating at least one month of convalescence; 2) there are severe postoperative residuals, such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one or more major joints, a body cast, the necessity of home confinement, or the necessity of crutches or a wheel chair; or 3) there is immobilization by cast, though no surgery, of one or more major joints. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.30.

The evidence does not indicate that the Veteran was hospitalized for a period of 21 days or experienced post-surgery convalescence. The Veteran had a bunionectomy on January 19, 2011. That same day, he was discharged to his home at 11:30 am. Three hours later, a VA physical therapist indicated that the Veteran had been issued, fitted for, and instructed in the use of axillary crutches. A January 25, 2011, VA podiatry outpatient note indicated that "pain medication had been working well," that the surgical site showed some inflammation but minimal swelling, that the Veteran was "progressing well for eight days post-surgery," and that the Veteran was to continue to use his surgical shoe at all times when weight-bearing. Subsequent VA podiatry notes dated February 1, February 14, March 7, and March 11, all indicated that there was minimal swelling and no inflammation. VA podiatry notes dated April 22 and May 24 recorded "back pain" as the major side-effect. There is no indication that the Veteran returned to the hospital for a period of 21 days or more, underwent a month of convalescence, experienced severe postoperative residuals, or had one or more major joints immobilized by a cast. This evidence weighs against entitlement to a temporary total rating. 

V. TDIU

The Veteran is claiming entitlement to individual unemployability due to service-connected disability (TDIU). 

VA regulations indicate that when a veteran's schedular rating is less than total (for a single or combination of disabilities), a total rating may nonetheless be assigned: 1) if there is only one disability, this disability shall be ratable at 60 percent or more; and 2) if there are two or more disabilities, at least one disability shall be ratable at 40 percent or more, and there must be sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 

In addition to the foregoing, there must be evidence that the disabled person is unable to secure or follow a substantially gainful occupation. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. Marginal employment is not considered the same as substantially gainful employment. In reaching such a determination, the central inquiry is "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

A total disability rating may also be assigned pursuant to the procedures set forth in 38 C.F.R. § 4.16(b) for veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16(a). 

The Veteran's service-connected disabilities are degenerative arthritis of the lumbar spine at 10 percent, tinnitus at 10 percent, and hallux valgus at 10 percent with a combined rating of 30 percent. The Veteran does not meet the percentage rating standards to be considered for individual unemployability under 38 C.F.R. § 4.16(a).

Nevertheless, it is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. In such cases, rating boards are to submit to the Director, VA Compensation and Pension Service, for extraschedular consideration Veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards. 38 C.F.R. § 4.16(b). 

The evidence does not establish that the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. VA medical notes dated May 2010 and June 2010 indicate that the Veteran was working full-time as a construction worker. According to a July 2011 VA nursing note, while the Veteran had been off of work for four months because of his foot surgery, his reported complaints were pain in his hips and back, particularly when he walked and bent over. VA vascular surgery notes dated December 2012 and January 2013 indicated that the Veteran was "not currently working due to vascular disease." During the July 2014 hearing, the Veteran stated that he was unable to work after his foot surgery because of pain in his hips and knees. The Veteran is not service-connected for a hip condition, knee condition, leg condition, or vascular disease. Since these nonservice-connected disorders are consistently characterized as the basis of the Veteran's unemployability, entitlement to a TDIU is inappropriate. 

Additionally, VA examiners have consistently stated that the Veteran's individual service-connected disabilities do not render him unemployable. A March 2013 VA back examiner stated that the Veteran's disorder would "limit employment to light physical and sedentary work." An April 2013 VA foot examiner noted that the Veteran "could no longer do work requiring prolonged standing or walking." An April 2017 VA foot examiner stated that "[t]here is no impact from [the Veteran's] bunionectomy on his ability to function in any occupational environment." An April 2017 back examiner stated that the Veteran's back disorder "has only a minimal impact on [the Veteran's] ability to function in an occupational environment; namely, he would be unable to engage in heavy manual labor with repetitive heavy lifting, but could do light manual labor and sedentary work." These records suggest that the Veteran's service-connected disabilities are limiting but do not render him unemployable. 

Given the overall disability picture, and the Veteran's history of employment, the Board finds that the evidence as a whole establishes that the Veteran retains the ability to obtain and maintain employment. Therefore, the Board finds that referral of the claim to the Director, VA Compensation and Pension Service, is not warranted.


ORDER

Entitlement to service connection for degenerative joint disease, left hip, secondary to service-connected left hallux valgus, left great toe, status post-bunionectomy and metatarsal osteotomy, is denied.

Entitlement to service connection for left lower extremity sciatica secondary to service-connected degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1 is denied.

Entitlement to service connection for right lower extremity sciatica secondary to service-connected degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1 is denied.

Entitlement to service connection for an acquired psychiatric disorder to include anxiety and depression, secondary to service-connected disabilities, is denied. 

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to an increased rating for hallux valgus, left great toe, status post-bunionectomy and metatarsal osteotomy, currently rated as 10 percent disabling, is denied.

Entitlement to an increased rating for degenerative arthritis of the lumbar spine at L3-L4, L5-L6, and L6-S1, currently rated as 10 percent disabling, is denied.

Entitlement to a total temporary rating due to treatment for a service-connected condition is denied. 

Entitlement to a TDIU is denied. 




____________________________________________
Michael J. Skaltsounis 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs